Jones, J.,
 

 dissenting. On the eve of adjournment there is not time to amplify one’s views in these cases, but I wish to say that this case is more far reaching in its tendencies than any other reported case that has come to my attention. Briefly stated, I dissent from the legal principles here announced for various reasons, among which are the following:
 

 
 *136
 
 Although the commission made a partial allowance therefor, the majority decision permits no allowance for depletion or amortization of utilities in cases such as these, wherd the annual drain upon their gas field resources by way of gas depletion is so heavy, eventually amounting to total exhaustion. Such a decision, in my judgment, where a low rate is fixed, tends to pure confiscation of property.
 

 The decision, by considering book values as a basis of valuation, in face of overwhelming expert testimony establishing higher values, is, in that respect, erroneous.
 

 The disallowance for delayed rentals and of valuation for the gas reserve leases, which are designated as “Class No. 2,” is, in my judgment, erroneous. “Class No. 2” is used and useful as a reasonable reserve gas property, and should have been given a reasonable valuation. The theory advanced that a tract held in reserve may be capitalized only if and when it is being actually operated is obviously unsound. It might as well be argued that a set of steam boilers, held in reserve for unforeseen contingencies but not presently operated, should not be valued until they were being put into actual use. The utility’s gas territory is its chief and necessary asset; its extent being measured by the requirement of all the communities which it is called upon to serve and the reasonable cost of service should be allocated among them. This utility is required to and does provide for the needs of the public in many sections of the state. In view of the short period of life which the commission found that “Class No. 1” (the tract being actually operated) had, and especially in view of longer periods of municipal franchises which the utility may be compelled to fulfill, a reasonable valuation for gas tract No. 2 held in reserve should have been allowed; otherwise no long-term public franchise contract could be safely entered into, either by the utility or the municipality. Because
 
 *137
 
 of the peculiar hazards of the business and of inevitable gas exhaustion resulting in so short a period as that found by the commission (being presently three years and two months), ordinary business sense would require a reasonable gas tract reserve, in addition to the tract that is being actually operated, in order to supply the public’s future needs. That situation, which is now so evident, did not so clearly appear when we decided the case of
 
 Logan Gas Co.
 
 v.
 
 Public Utilities Commission,
 
 121 Ohio St., 507, 169 N. E., 575.